# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LINDA ANN HANSEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-14-315-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Linda Ann Hansen requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born August 26, 1968, and was forty-four years old at the time of the administrative hearing (Tr. 133). She has a high school education, some college, and no past relevant work (Tr. 43, 66, 175). The claimant initially alleged that she has been unable to work since June 1, 2000, but amended her onset date to August 2, 2011, at the administrative hearing (Tr. 37-38). She alleges that she is unable to work due to depression and bipolar disorder (Tr. 174).

## Procedural History

On August 2, 2011, the claimant filed for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Luke Liter held an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 14, 2013 (Tr. 19-28). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant could perform a full range of work at all exertional levels, but was limited to simple tasks with superficial contact with co-workers and supervisors and no public contact (Tr. 24). The ALJ concluded that there was work she could perform in the regional and national economies, *e. g.*, hand packer, kitchen helper, and sorter (Tr. 26).

**Review**

The claimant contends that the ALJ erred by: (i) not including all of her limitations in the hypotheticals presented to the vocational expert (VE), (ii) not developing the record, (iii) failing to properly analyze the medical source and other source evidence, and (iv) failing to properly analyze her credibility. The undersigned Magistrate Judge finds that the ALJ did fail to properly analyze the medical source and other source evidence, and the decision of the Commissioner should therefore be reversed and the case remanded for further proceedings.

The ALJ found that the claimant's bipolar disorder, borderline personality disorder, and substance abuse disorder were severe impairments; that her lumbar spine tenderness was nonsevere; and that her alleged emphysema and poly-joint impairments were medically nondeterminable (Tr. 21). The relevant medical evidence as to her mental impairments reveals that the claimant had sporadic and limited mental health treatment prior to December 2010. She was admitted to St. Luke's Hospital in March 2005, diagnosed with anxiety not otherwise specified, and discharged after three days with a Global Assessment of Functioning (GAF) score of 60 (Tr. 253-55). Dr. Paul Penningroth treated the claimant for manic depressive disorder from February 2006 through May 2006 (Tr. 318-24). He managed the claimant's medication and recommended electroconvulsion therapy, which she received in May 2006 (Tr. 236-40, 318-324).

On December 6, 2010, the claimant began treatment at CREOKS Behavioral Health Services (CREOKS), and was diagnosed with major depressive disorder, severe,

without psychotic features, along with a GAF score of 50 (Tr. 337-46). The record indicates the claimant participated in group and individual therapy there from August 2011 through December 2011 (Tr. 290-311). Additionally, Dr. Vanessa Werlla managed the claimant's medications and diagnosed her with a substance abuse disorder, in early remission (Tr. 312-314, 336). Dr. Werlla noted the claimant had personality conflicts with most of the staff at CREOKS and that there was "lots of blaming others" (Tr. 313).

On December 10, 2010, the claimant presented to Dr. Joel Anderson, III, and reported that her medications were not effective in treating her depression and anxiety. Dr. Anderson diagnosed the claimant with bipolar disorder unspecified (Tr. 259-61). The claimant saw Dr. Anderson the following month but the record does not reflect any further treatment by Dr. Anderson (Tr. 257-58).

Dr. Kathleen Ward conducted a mental status examination of the claimant on October 6, 2011 (Tr. 263-67). Dr. Ward diagnosed the claimant with bipolar disorder, alcohol dependence, and borderline personality disorder (Tr. 266). She opined that the claimant had some limited insight and a guarded prognosis due to the intensity of her borderline personality disorder overlay (Tr. 266).

State reviewing physician Dr. Sally Varghese reviewed the claimant's records on October 20, 2011 (Tr. 269-87). She concluded on the Psychiatric Review Technique Form (PRT) that the claimant had moderate limitations in all three areas of functioning, and that she had three episodes of decompensation (Tr. 279). On the Mental RFC Assessment, Dr. Varghese opined that the claimant was moderately limited in her ability to understand and remember detailed instructions, to carry out detailed instructions, and

to interact appropriately with the general public (Tr. 283-84). Dr. Varghese concluded that the claimant could perform simple and some complex tasks, could relate to others on a superficial work basis, and could adapt to a work situation, but had limitations with the general public (Tr. 285).

At the administrative hearing, the claimant testified she was unable to work because of depression, anxiety, and emphysema (Tr. 46-47). She testified she had one or two "bad days" per week and that on those days she does not attend her children's sporting events because she cannot "face all those people," she remains in her pajamas, doesn't comb her hair, and doesn't bathe (Tr. 51, 53). She further testified that she also has cycles of depression that can last for up to four months and that her depression makes her "physically sick" and weak and causes her to lose weight and shake (Tr. 58-60). She stated she doesn't get along well with other people and always feels like people are looking at her, talking about her, and don't like her (Tr. 62-63).

In his written opinion, the ALJ summarized the claimant's testimony as well as much of the medical record. The ALJ mentioned Dr. Ward's opinion numerous times, reciting all the positive indicators including intact memory, adequate concentration, and average intelligence, but did not mention that Dr. Ward also found the claimant had some limited insight or that she was concerned about the claimant's prognosis given the intensity of her borderline personality disorder overlay (Tr. 266). The ALJ referenced some of Dr. Werlla's treatment notes, but failed to provide any analysis or assign any weight with regard to her assessment. As to the state reviewing physicians' opinions, he

assigned each of them "great weight" and noted their stated limitations were incorporated into the claimant's RFC, but did not provide any explanation for his assigned weight.

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ provided a thorough summary of Dr. Ward's report and mentioned some of Dr. Werlla's treatment notes, but appeared to leave out negative findings related to her mental status, did not conduct any analysis of their findings, and further failed to disclose what weight he afforded their opinions. This was particularly important because Dr. Werlla was one of the claimant's treating physicians and because the ALJ adopted Dr. Ward's findings regarding the claimant's concentration, memory,

-7-

and intelligence, but ignored both her finding regarding the claimant's insight and her opinion that the intensity of the claimant's borderline personality overlay makes her prognosis guarded. It was error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of his own determination while disregarding unsupportive findings. *See, e. g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper."). In addition to evaluating Dr. Ward's and Dr. Werlla's findings according to the appropriate standards and indicating what weight he was assigning to them, the ALJ should have explained why he found certain aspects of Dr. Ward's report persuasive but not others. *See Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others.").

Additionally, the claimant's mother completed a Third Party Function Report. She stated the claimant has trouble sleeping, has a bad memory, doesn't get along with people, is unable to focus, and has had mental problems her entire life (Tr. 152-53, 157).

She indicated the claimant's ability to do household chores depends on her mental state and that she needs to be reminded to do laundry (Tr. 154). She also stated the claimant has problems getting along with people because she thinks everyone is against her (Tr. 157). Social Security Ruling 06-03p (SSR 06-03p) provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from nonmedical sources who have not seen a claimant in their professional capacity. *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 (Aug. 9, 2006). SSR 06-03p states, in part, that other source opinion evidence, such as those from spouses, parents, friends, and neighbors, should be evaluated by considering the following factors: (i) nature and extent of the relationship; (ii) whether the evidence is consistent with other evidence; and (iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *5-6. Here, the ALJ made a single reference to one section of the Third Party Function Report, but failed to acknowledge the rest of the report. He thus wholly failed to evaluate it in accordance with the factors set out in SSR 06-03p.

Because the ALJ failed to properly analyze all of the claimant's medical and other source evidence of record, the decision of the Commissioner must be reversed and the case remanded to the ALJ for a proper analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.

The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 29th day of September, 2015.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**